```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
ANTHONY MCGHEE

          Petitioner,                    MEMORANDUM AND ORDER

     -against-                           Civil Action No.
                                         CV-05-3842 (DGT)

BRIAN FISCHER

          Respondent.

-------------------------------X
```

Trager, J:

Petitioner Anthony McGhee filed this habeas petition pursuant to 18 U.S.C. § 2254 to contest the constitutionality of his New York State conviction for Manslaughter. McGhee raises one alleged constitutional deficiency for federal review: the trial court's failure to issue a justification charge.

**Background**

A Suffolk County jury tried and convicted Anthony McGhee ("McGhee") for the 1998 murder of Demitrius Brown. At trial, the prosecution presented evidence to show that on May 31, 1998, McGhee approached Brown outside a house party at around 2 a.m., called Brown away from his group of friends and then stabbed him in the chest. The motive was revenge; a week before the murder, Brown had punched McGhee in the face during a disagreement apparently related to Brown's girlfriend. McGhee contested all

of these allegations and maintained his innocence.

**(1)**

McGhee was charged with one count of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]).

Absent any physical evidence or eyewitnesses, the prosecution based its case on circumstantial evidence supported by McGhee's incriminating statements to the police.

Two witnesses – Brown's stepsister Charlotta Byrd and his best friend James McCullough – were the last people present with Brown before he was stabbed. Both Byrd and McCullough[1] recalled lingering with Brown outside Byrd's house when a man neither of them knew approached at a distance of about fifteen feet. (Tr. at 457-58.)

Byrd and McCullough recalled that this man, whom both later identified as McGhee[2], called out to Brown,–"Yo, D"– and Brown left to go talk to him. Neither Byrd nor McCullough noticed anything odd about the conversation at the time. They knew something was awry, however, when Brown came running past them a few minutes later. He stopped a few yards in front of them, bent over with his hands on his knees, and called out to McCullough: "Come on, I've been stabbed." (Tr. at 468, 596, 603.)

---

[1] McCullough testified that he did not recall Byrd being present with them on the street at that time.

[2] Byrd identified him in a line-up; McCullough made an in court identification.

McCullough drove his car to Brown and then drove him to the hospital.

McCullough's testimony provided the next critical link to McGhee. He told the jury that on the way to the hospital, Brown described the identity of his assailant. Brown indicated that the same person he had been in a fight with the week before had just stabbed him. Brown also identified a man named "Woo" as a witness to that previous altercation. (Tr. at 597, 629-30.)

Lester Stanley, also known as "Woo," then identified McGhee as the person who had fought with Brown several weeks earlier. According to Stanley's testimony, the fight, which ended when Brown punched McGhee in the face, was about Brown's girlfriend and her alleged interest in McGhee.

Having established McGhee's identity, the prosecution then moved to corroborate it with incriminating statements McGhee made in police custody following his arrest on June 3, 1998. Police detectives testified that McGhee initially claimed that he did not know Brown, that he had never been in a fight with him and that he had been at his girlfriend's house when Brown was murdered. Police further testified that McGhee related a very different story to them after detectives informed him that Charlotta Byrd had identified him in a line-up. This time, McGhee both incriminated himself and claimed self-defense.

In a written statement to the police, McGhee related details

about the earlier fight between him and Brown, and his interaction with Brown on the night of the murder. He explained that on the night of the murder, after unsuccessfully trying to get into Charlotta Bryd's party, he encountered Brown in the street. (Tr. at 859-861.) Brown drew a knife and began swinging at him. Id. To defend himself, McGhee pulled out his own knife. Id. McGhee told the police that although he tried to withdraw from the fight, Brown persisted until at some point, Brown's knife fell to the ground. At that moment, McGhee swung his knife and stabbed Brown. Id. He then fled the scene. Id.

The prosecution also introduced an incriminating oral statement McGhee made while in police custody. According to Detective Douglas Mercer's testimony, he overheard a telephone conversation between McGhee and his mother during which McGhee allegedly said: "They had an eyewitness saying I did it. It's too late, I did it Ma. I did the murder. I am in Yaphank. I am going to court tomorrow. I did it. I did it Ma. They got me for the murder. I did the murder." (Tr. at 1053-54.)

Additionally, the prosecution introduced two photographs of Brown into evidence. The photographs, presented to McGhee while in police custody, showed that McGhee had initialed each photograph beside notes indicating: (1) "This is Merc." and (2) This is were [sic] I stabbed Merc." (Tr. at 913-17.)

Finally, although the prosecution did not present a murder

weapon, several witnesses testified about McGhee's relationship with knives. First, detectives told the jury that although they never found the knife used to kill Brown, they accompanied McGhee to a lake in Roosevelt, Long Island, where McGhee claimed to have thrown the knife. (Tr. at 1044-50.) Then, the prosecution called Susanne Harper, a friend of McGhee's, who testified that early on May 31st, she returned home from Charlotta Byrd's party to find McGhee outside her house; she invited him inside and while they talked, she recalled that he shifted a black-handled knife back and forth from one hand to the other. (Tr. at 527-28, 530-31, 553.) She also testified that at that time, she "saw a tissue in the bathroom with red on it." (Resp. Br. at 8; Tr. at 534-35.)

**(2)**

The defense relied principally on McGhee's testimony to refute the prosecution's evidence. Contrary to what he indicated in his written statement to the police, on the stand McGhee disavowed any recollection of either the earlier fight with Brown or the second and fatal fight on May 31, 1998. Indeed, McGhee claimed that he did not know Brown at all. McGhee then described a tortuous tale of all the places he briefly visited the night of the murder: he left his mother's house close to midnight, went to his son's mother's house for about five minutes, proceeded to his girlfriend's house for fifteen minutes and then at around one

5

o'clock in the morning, arrived at Susanne Harper's house. At some point, after seeing police vehicles on his street, he returned to his mother's house. He was greeted there by his brother, who informed McGhee that someone had just called and said that people on the street were saying that McGhee had stabbed someone. McGhee denied stabbing anyone, and went to sleep.

McGhee also repudiated the incriminating statements that he had given to the police, alleging that police had coercively procured both the oral and written statements admitted during the prosecution's case.[3] According to McGhee, detectives hit him in the face, punched in the stomach and told him that they would not stop beating him unless he told them something or signed something. (Tr. at 1246, 1252-53.) He additionally claimed that police forced him to sign the rights card, deprived him of food, sleep and beverages, and prevented him from using the bathroom. (Tr. at 1248, 1250.) Finally, McGhee testified that before he was allowed to speak with his mother, police instructed him to confess to his mother; when McGhee refused, a detective squeezed his neck and told him that if he did not confess, they would hang

---

[3] Notably, in Point V of McGhee's appellate brief, he vigorously attacked the reliability of his statement to the police in order to prove that the prosecution had not established his guilty beyond a reasonable doubt. (App. Br. at 32-35.) This is in contrast to Point I, where he argued that the statement should have provided the basis for a justification charge. (App. Br. at 11.)

6

up the phone.

On cross-examination, the prosecution elicited some damaging information from McGhee. First, the prosecution introduced into evidence a photograph of McGhee wearing a shirt bearing the words "Shank, a.k.a. Killer." (Tr. at 1293-96.) When confronted with the photograph, McGhee admitted that around the neighborhood, he was known as "Shanky," but adamantly denied the moniker "Shank." He claimed that his parents gave him the nickname because he had been tough as a kid and denied that it had anything to do with a proclivity for knives. McGhee then denied knowing what a shank was, completely contradicting his own testimony just moments earlier that "in jail [a shank is] used as a term as a razor or a knife." (Tr. at 1293-1296).

Next, the prosecution impeached several pieces of his testimony. Significantly, the prosecution cross-examined him about his notice of alibi, earlier introduced and then withdrawn, claiming that his direct testimony directly contradicted his alibi information as to whom he was with during the murder. (Tr. at 1335-37.) Upon further questioning, McGhee claimed that his trial attorney had concocted the notice of alibi without his permission. Id. McGhee also attributed other discrepancies between his testimony and that of prosecution witnesses to witness perjury. Id.

In addition to McGhee, the defense also called various of

his family members to the stand to testify as to his presence at home hours before Brown's murder. His sister Kischer McGhee Taylor and his mother Shirley McGhee testified that he was at home at least between eleven o'clock and eleven thirty on May 30, 1998. (Tr. at 1136, 1174-75.) His mother did not know, however, whether he left the house that night after she fell asleep; his sister did not see McGhee again until she woke up the next day. (Tr. at 1137-38, 1176.)

The defense strategy also relied upon discrediting certain prosecution witnesses. On cross-examination, Lester Stanley admitted that the police threatened to file charges against him and incarcerate him up to a year if he testified inconsistently with the earlier statement he gave to police. (Tr. at 700, 714.) Stanley indeed testified that he never gave a statement to the police, but rather refused to sign a statement that police officers had written. Furthermore, he explained that on at least three occasions between his appearances before the grand jury and at trial, "the law" visited him at his home and read his statement to him. (Tr. at 705-706.)

(3)

At the end of its case, defense counsel unsuccessfully requested a justification charge, arguing that the jury could reject McGhee's testimony as to his alibi and yet still credit his statement to the police asserting self defense. In denying

the motion, the judge noted that (1) justification was inconsistent with his alibi defense and (2) the evidence did not support the charge.

The jury found McGhee guilty of Manslaughter in the First Degree. On October 11, 2000, the trial court entered two judgments against McGhee: one stemming from the jury trial relevant to this habeas petition (Indictment Number 1337/98), and a second pursuant to a guilty plea McGhee proffered in relation to crimes unrelated to this habeas petition (Indictment Number 1332B/98).[4] The trial court sentenced him to twelve and a half to twenty-five years to run concurrently with the sentence brokered by plea agreement in Indictment Number 1332B/98.

At sentencing, McGhee orally admitted that he stabbed Brown. (Sentencing at 18.) This time, he claimed that he and Brown had gotten into an argument at Charlotta Byrd's party. According to McGhee's statement in open court, Brown reached out to punch McGhee. In response, McGhee pulled out his knife and stabbed him, not intending to kill him. (Sentencing 18-19.)

McGhee unsuccessfully appealed his convictions in both of the aforementioned indictments to the Appellate Division Second Department ("Appellate Division"). On appeal, McGhee raised

---

[4] Under Indictment Number 1332B/1998, McGhee was convicted for Murder in the Second Degree, Assault in the First Degree, Robbery in the First Degree and Criminal Possession of Stolen Property in the Fourth Degree.

9

seven claims relating to the Brown case including: (1) the trial court's failure to charge a justification defense; (2) the fairness of the jury pool; (3) the prosecution's failure to prove his guilt beyond a reasonable doubt; and (4) the excessive and harsh nature of his sentence.  He also presented two issues of prosecutorial misconduct, both relating to the prosecutor's improper cross-examination of McGhee.  Finally, McGhee argued that should his Manslaughter conviction be overturned, the court should permit him to withdraw his pleas of guilty under Indictment Number 1332B/98.

The Appellate Division affirmed his conviction on February 17, 2004.  People v. McGhee, 4 A.D.3d 485, 772 N.Y.S.2d 344 (2d Dep't 2004).  Significantly, the Appellate Division held that the County Court had properly refused to charge the jury as to the defense of justification because there was no reasonable view of the evidence from which the jury could have found that McGhee's actions were justified.  The Appellate Division noted that: "By his own testimony[5], the defendant established that just before the victim was stabbed, the victim dropped the knife he allegedly possessed."  Id. at 486.  The Appellate Division then rejected the remaining claims as either a proper exercise of the County

---

[5] The Appellate Division opinion mistakenly noted that McGhee made this admission in his "testimony." As detailed above, it was in his statement to the police that he included this information.

Court's discretion, unpreserved for appellate review or harmless in light of the "overwhelming evidence" of McGhee's guilt.  Id. The Court of Appeals denied McGhee's application for leave to appeal on May 17, 2005.  People v. McGhee, 2 N.Y.3d 803, 814 N.E.2d 474, 781 N.Y.S.2d 302 (2004).

**Discussion**

McGhee filed this § 2254 petition on August 12, 2005.  He raises but one federal constitutional issue: whether the trial court's refusal to charge the jury on the defense of justification constitutes denial of his right to due process. For the reasons that follow, habeas relief is denied.

**(1)**

Pursuant to the 1996 Antiterrorism and Effective Death Penalty Act (or "AEDPA"), when a federal court reviews the constitutionality of a conviction rendered pursuant to state law, it has limited authority to grant the writ of habeas corpus.  A federal court may only grant the writ where a state court's decision was based on the merits and either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the state court

11

proceeding." 18 U.S.C. § 2254(d).

McGhee's claim that the trial court violated his right to due process of the law when it refused to charge justification is entirely without merit. Errors in jury instructions involve issues of state law and thus, rarely provide a sufficient basis for federal habeas review. To prevail on an allegation of improper jury instructions, it is not enough for a habeas petitioner to "establish[]. . . merely that the instruction is undesirable, erroneous or even universally condemned." Cupp v. Naughten, 414 U.S. 141, 146 (1973) (internal citations omitted). The petitioner must demonstrate that the instruction or the failure to instruct, as the case may be, "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. That is, even if the trial court denied the defendant an instruction to which he was entitled, habeas relief is not warranted unless the error was sufficiently harmful to render the conviction unfair. Id., 414 U.S. 146-47. McGhee does not come close to satisfying this rigorous standard of review.

As a preliminary matter, McGhee is correct in asserting that neither New York or federal law precludes a justification defense where another, inconsistent defense is simultaneously raised. Matthews v. United States, 485 U.S. 58, 63 (1988); People v. Steele, 26 N.Y.2d 526, 529, 311 N.Y.S.2d 889, 891-92, 260 N.E.2d 527, 529-30 (1970) (holding that the defense of alibi did not

12

preclude a requested charge of justification since the jury might disbelieve the alibi and still find that the defendant acted justifiably). Notwithstanding this general proposition, a court is not required to issue the requested instructions on any view of the evidence. Where the only support for two inconsistent defenses comes from contradictory statements from the accused, as in this case, a court's refusal to permit inconsistent defenses is entirely appropriate.

The United States Constitution does not provide the accused with an absolute right to present a justification defense. An instruction is only constitutionally required where "there exists sufficient evidence for a reasonable jury to find in his favor." Matthews, 485 U.S. 63 (citing Stevenson v. United States, 162 U.S. 313 (1896)). As a corollary, "a court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted." Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (citing People v. Butts, 72 N.Y.2d 746, 750, 533 N.E.2d 660, 536 N.Y.S.2d 730, 733 (1988)). McGhee's request for a justification charge when his trial testimony repudiated the only evidence of justification is surely to adopt an "irrational view of the evidence." Id. Neither New York or federal law compelled a justification instruction in this circumstance.

Under New York law, a person is justified in the use of force against another only when two conditions are satisfied:

13

(1) he subjectively believed that deadly force was necessary under the circumstances and (2) that a reasonable person in his situation would have held this belief. New York Penal Law § 35.15 (McKinney 1987); People v. Goetz, 68 N.Y.2d 96, 115, 497 N.E.2d 41, 506 N.Y.S.2d 18, 29-30 (1986). A justification charge, however, is not appropriate where a defendant, even in these circumstances, knows that he could, with complete safety, avoid using deadly force by retreating. See New York Penal Law § 35.15(2)(a) (McKinney 1987). In assessing whether the evidence supports a justification charge, the facts must be viewed in the light most favorable to the defendant. People v. Steele, 26 N.Y.2d at 529.

In the present case, as the trial court correctly noted, there was no reasonable view of the evidence that would have supported a justification instruction. Even when the evidence is construed in the light most favorable to McGhee, under the circumstances, justification remained an entirely desperate defense. The only possible support for a justification charge arises from McGhee's written statement to the police that Brown drew a knife on him, McGhee attempted to withdraw, but then as Brown dropped his knife, McGhee stabbed him. This statement is completely uncorroborated and indeed contradicted by the rest of the record, including McGhee's own testimony. Furthermore, it does not support the requested charge.

On direct-examination McGhee repudiated the very statements

to the police that formed the only possible support for a justification charge by asserting an alibi.  McGhee told the jury that he did not know the deceased, that on the night of the murder, he did not meet him, let alone stab him, and that he had not had a fight with him prior to his murder.  Thus, had the trial court granted defense counsel's motion, the trial court would have invited the jury to engage in entirely irrational reasoning – rejecting McGhee's testimony as incredible while simultaneously crediting his prior repudiated statement to police.

Moreover, even assuming the trial court permitted the jury to find that McGhee's allegedly coerced statement to the police was credible while his subsequent, uncoerced trial testimony was incredible, the outcome at trial would be no different.  In rejecting defense counsel's request for the justification instruction, the trial court found that the charge would be improper because McGhee could have retreated with complete safety.  The trial court based its finding on the very statement McGhee argues compelled a justification charge.  While asserting self-defense, McGhee explained that he stabbed Brown after Brown's knife had fallen to the ground. (Pet'r Br. at 9.)  This finding would have precluded the jury from a finding McGhee's actions to be justified since he could have avoided deadly force by retreating.  New York Penal Law § 35.15(2)(a) (McKinney 1987).  McGhee's claim is, therefore, denied.

## Conclusion

For the foregoing reasons, McGhee's habeas corpus petition is denied. No certificate of appealability will be granted. The Clerk of Court is directed to enter judgment and close the case.

Dated:   Brooklyn, New York
         June 23, 2006

SO ORDERED:

    /s/
David G. Trager
United States District Judge